```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| VARSITY WIRELESS INVESTORS, LLC, <br>     Plaintiff, <br><br> v. <br><br> TOWN OF HAMILTON, ET AL., <br>     Defendants. | ) <br> ) <br> ) <br> )   C.A. No. 17-11826-MLW <br> ) <br> ) <br> ) <br> ) |

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                                     March 31, 2019

I.   INTRODUCTION

In 2017, plaintiff Varsity Wireless Investors LLC ("Varsity") applied for a special permit for the installation of a wireless telecommunications facility (the "Facility") in the Town of Hamilton (the "Town"). The special permit was denied by the Town of Hamilton Planning Board (the "Planning Board"). Varsity filed this suit, against the Town, the Planning Board, and its members in their official capacities. Varsity alleges two claims under the Telecommunications Act of 1996 (the "TCA"), based on the Planning Board's denial of the special permit. Varsity and the Town have negotiated an Agreement for Judgment (the "Agreement"), settling Varsity's claims and requiring the issuance of the special permit with certain conditions. Varsity and the Town have asked the court to approve the Agreement and enter the Judgment.

Two additional motions now before the court arise out of a feature of the special permit granting process under the laws of the Commonwealth of Massachusetts. The Massachusetts state zoning law requires that a permit be approved by two-thirds of the members of the special permit granting authority when that board has more than five members. Although four members of the seven-person Town of Hamilton Planning Board voted to give Varsity the requested permit, the permit was denied because three Planning Board members -- Peter Clark, Edwin Howard, and Claudia Woods (the "Planning Board Defendants") -- voted against the request. When Varsity sued the Town, the Planning Board, and the members of the Planning Board in their official capacities, the Town filed an answer. The Planning Board did not. However, the Planning Board Defendants, by privately retained counsel, filed an answer separate from the Town's answer.

The Planning Board Defendants oppose approval of the Agreement for Judgment. The Town and Varsity contend that the Planning Board Defendants lack standing to participate in this litigation separately from the Town and to challenge the Agreement. Therefore, they have moved to strike the Planning Board Defendants' answer to the complaint.

The Planning Board Defendants have moved, pursuant to Federal Rule of Civil Procedure 21, to dismiss the Town as a party. This motion was filed after a hearing on the motion to strike, in

another effort by the Planning Board Defendants to prevent entry of judgment pursuant to the Agreement.

For the reasons explained in this Memorandum and Order, the court is: (1) denying the Planning Board Defendants' Rule 21 Motion to Dismiss the Town for Misjoinder (the "Rule 21 Motion"); (2) allowing the Town's Motion to Strike the Planning Board Defendants' Answer; and after nevertheless considering the Planning Board Defendants' objections, (3) entering judgment in accordance with the Agreement for Judgment.

II. PROCEDURAL HISTORY

In its Complaint, Varsity named as defendants, the Town, the Planning Board, and the seven members of the Planning Board in their official capacities. Varsity alleges that the defendants violated Section 704 of the Telecommunications Act of 1996 because the denial of the requested special permit "effectively prohibits provision of personal wireless services" in a particular area and was not based on "substantial evidence in a written record." See 47 U.S.C. §332(c)(7)(B)(iii); id. (B)(i)(II). In addition, Varsity sought review of the Planning Board decision under M.G.L Chapter 40A, asserting that the Board exceeded its authority in denying Varsity's request for a special permit. Accordingly, Varsity sought an order directing the Board to grant Varsity all necessary permits for the construction and operations of the Facility. See Complaint (Docket No. 1) at 1.

Defendant Town of Hamilton filed an answer to the Complaint. See Docket No. 19. The Planning Board did not file an answer. See Joint Statement (Docket No. 34) at 2, 3. However, the Planning Board Defendants filed a separate answer, containing both denials and affirmative defenses. See Docket No. 17. After this answer was filed, Woods moved out of Hamilton and resigned from the Planning Board. See Joint Statement (Docket No. 34) at 2-3.

The Town subsequently filed a Motion to Strike the Answer of the Planning Board Defendants. See Docket No. 21. Varsity joined that motion, see Docket No. 24, which the Planning Board Defendants opposed, see Docket No. 26.

Varsity and the Town later filed the Agreement for Judgment. See Docket No. 28. The Agreement provides for judgment for Varsity on all counts of the Complaint and directs the issuance of the special permit, subject to certain conditions. Id. at 2. The conditions consist largely of those that the Board indicated in its August, 2017 decision would have been necessary if the special permit had been granted. Compare Planning Board Findings and Decision (Docket No. 2) at 5-5 and Agreement for Judgment at 2-3. The Planning Board Defendants responded to the Agreement for Judgment, contending that the Motion to Strike, and a determination of the proper parties to the dispute, would have to be decided before the court decided whether to approve the proposed

4

settlement. See Docket No. 29. Varsity filed a reply. See Docket Nos. 30-1.

The court ordered the parties to be prepared to discuss, at an October 17, 2018 hearing, the implications of Indus. Commc'ns & Elecs., Inc. v. Town of Alton, N.H., 646 F.3d 76, 78-81 (1st Cir. 2011), concerning whether the Planning Board Defendants had standing to submit an answer to the Complaint separate from that of the Town and/or to challenge the Agreement for Judgment. The court also directed the parties' attention to a pertinent section of the Town of Hamilton By-laws (the "By-laws"). See Docket No. 35.

At the October 17, 2018 hearing, the court ordered additional briefing concerning three issues: (1) whether the Planning Board Defendants have a protectable interest and, therefore, standing to participate in this case; (2) the applicable standards for court approval of a consent judgment; and (3) whether or not the Agreement for Judgment satisfies those requirements. See Docket No. 38. Varsity and the Town submitted memoranda on these issues. See Docket Nos. 40, 44.

In addition to addressing the foregoing three issues, the Planning Board Defendants filed a motion to dismiss the Town as a party under Federal Rule of Civil Procedure 21. See Docket Nos. 42, 43. The Planning Board Defendants argue that the Town is not a necessary party in this case and, therefore, is dispensable. The

Planning Board Defendants also assert that the Town has been "fraudulently joined" as a defendant to help Varsity obtain a consent decree, and that there is no relief Varsity can seek against the Town. See Docket No. 43 at 4-9. The court ordered Varsity and the Town to respond to the Rule 21 Motion. See Docket No. 46. They have done so jointly. See Docket No. 47.

III. FACTUAL BACKGROUND

The Planning Board is authorized by the Hamilton By-Laws to approve applications for special permits for the construction of communications towers and telecommunication antenna facilities. See Complaint (Docket No. 1) at ¶5. On May 19, 2017, Varsity applied to the Planning Board for a special permit to construct a 109 foot monopole tower at 557 Bay Road, in Hamilton. See id. at ¶26.

Varsity builds, owns, and operates communications infrastructure, and leases its infrastructure to personal wireless services providers, including Verizon Wireless ("Verizon"). Id. at ¶12. By mid-2017, Verizon had determined that there was a gap in its services in the area surrounding Bay Road in Hamilton. In collaboration with Varsity, it investigated potential sites for the installation of a personal wireless facility. Id. at ¶¶20-23. Determining that no existing structures were sufficient, Varsity identified the Bay Road site as the "sole appropriate and available location for the installation of a wireless telecommunications

6

facility to fill the substantial and significant gap in Verizon Wireless' wireless service." Id. at ¶23. The Bay Road site is property owned by the Town. Id.

The authority to issue a special permit in the Town is vested in the Planning Board. See Town of Hamilton Zoning By-Laws, §§3.1.3, 10.5, 7.2.2. Under Massachusetts law, M.G.L. Ch. 40A, §9a, a two-thirds majority vote, sometimes called a "supermajority," of a special permit granting authority is required to issue a special permit when the board is comprised of more than five members. See M.G.L. c.40A, §9a. The Hamilton Planning Board has seven members. See By-Laws (Docket No. 21-2) at 15. Therefore, five votes are required to grant a special permit.

The Planning Board voted on Varsity's application on August 1, 2017. See Planning Board Findings and Decision (Docket No. 2) at 5. The vote was four to three in favor of issuing the special permit with certain conditions. See Complaint (Docket No. 1) at ¶23. However, because it did not command a supermajority, Varsity's request for a special permit was denied. See id. In its decision, the Planning Board considered, among other things concerning the proposed Facility: the minimization of adverse visual impacts; the aesthetic effect on the neighborhood; whether the height was the minimum necessary to provide adequate service; and whether the Facility would "close a significant gap in wireless coverage for multiple providers . . . including Verizon." See id. at ¶¶34-42.

7

As a result of the denial of its request for a special permit, Varsity filed this case. On June 5, 2018, Varsity and the Town entered into the Agreement for Judgment.

## IV. THE PROPER PARTIES TO THIS CASE

### A. Legal Standards

#### 1. Protectable Interest in the TCA Context

The First Circuit considered standing requirements in the TCA context in Indus. Commc'ns & Elecs., Inc. v. Town of Alton, N.H.. See 646 F.3d 76 (1st Cir. 2011) ("Alton"). In Alton, the owners of private property near a proposed cell tower construction site -- David and Marilyn Slade -- intervened in a TCA case between the telecommunications company and the Town of Alton, on the side of the Town, after the company's request for a zoning variance was denied. See 646 F.3d 76. When the company and Town subsequently entered into an agreement that would have resulted in the allowance of the variance and construction of a one-hundred foot tower, the Slades objected. The First Circuit held that the Slades had Article III standing to defend the denial because they could show "injury in fact" related to the substance of the complaint. See id. at 79-80 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). More specifically, the First Circuit held that the Slades had standing because they possessed a "legal interest under state law" in the zoning protections because they could, under a New

Hampshire statute, sue to overturn the zoning board's variance decision. Id. at 80 (citing N.H. Rev. Stat. Ann. §677:4).

2. Necessary and Proper Parties

The standing issues underlying the Motion to Strike the Planning Board Defendant's Answer and the Motion for Dismissal of the Town implicate the requirements for necessary and proper parties under the Federal Rules of Civil Procedure. "The most direct use of standing concepts to identify proper defendants involves the question whether the injury complained of by the plaintiff was caused by the defendant sued." See Charles A. Wright, Arthur R. Miller, Mary K. Kane, 15A Fed. Prac. & Proc. Juris. §3902 (2d ed.). In their submissions to the court, the parties have framed some of their arguments as issues of misjoinder and improper parties.

Federal Rule of Civil Procedure 19(a) states that a party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties." See Fed. R. Civ. P. 19(a). In Shields v. Barrow, the Supreme Court described necessary parties as those "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." 58 U.S. 130, 139 (1855); see also 7 Fed. Prac. & Proc. Civ. §1604 (3d ed.).

9

Rule 20(a) provides that persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 21 states that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." In addition, "[a] court may declare a misjoinder of parties because no relief is demanded from one or more of the parties joined as defendants." See 7 Fed. Prac. & Proc. Civ. §1683.

B. Analysis

The TCA permits suits against a municipality alleging that wireless service has been effectively prohibited, or that a decision to deny a request to construct a wireless communications facility was not based on substantial evidence. See 47 U.S.C. §332(c)(7)(B). Varsity has sued the Town.[1]

---

[1] In the District of Massachusetts, towns are regularly named as defendants in TCA cases. See e.g. Am. Towers LLC v. Town of Shrewsbury, No. 17-10642-FDS, 2018 WL 3104105 (D. Mass. June 22, 2018); Cellco P'ship v. Town of Leicester, Mass., No. 16-10693-MGM, 2017 WL 4381673 (D. Mass. Sept. 29, 2017); Varsity Wireless,

At the October 17, 2019 hearing, Varsity stated that it also sued the members of the Planning Board in their official capacities because it understood that doing so is required by M.G.L. c.40A, §17. See Oct. 17, 2018 Tr. (Docket No. 48) at 7:17-20. This is incorrect. Section 17 only requires that board members be sued in their official capacities if the "complaint is filed by someone other than the original applicant, appellant or petitioner ...," such as an abutter. M.G.L. c.40A, §17 (emphasis added). Therefore, it appears that Massachusetts law does not require that the Planning Board Defendants be made parties to this case.

Nevertheless, the Planning Board may be a proper party and Varsity may have correctly sued all seven of its members in their official capacities. In denying the request for a special permit, the Planning Board caused the injury to Varsity that is the basis of this suit. See 15A Fed. Prac. & Proc. Juris. §3902 (2d ed.). Also, it may be the Planning Board that must issue the special permit if judgment enters in this case for Varsity. However, the Planning Board has evidently decided to rely on the Board of Selectman to litigate or resolve this case as the Planning Board

---

LLC v. Town of Boxford, No. 15-11833-MLW, 2016 WL 11004357 (D. Mass. Sept. 9, 2016); New Cingular Wireless PCS, LLC v. City of Cambridge, 834 F. Supp. 2d 46 (D. Mass. 2011).

11

has not filed an answer or otherwise participated in this litigation.

In any event, the Planning Board is required to allow the Board of Selectman and Town Counsel to act for the defendants in this case. Consistent with Massachusetts law, M.G.L. c.40, §§1&2,[2] the Hamilton By-laws provide that "the Board of Selectman shall have the authority to prosecute, defend, and compromise all litigation to which the Town is a Party." See By-laws, Chapter VII, Section 1 (Docket No. 21-2) at 21. This is such a case.

The Hamilton By-laws also provide that "Town Counsel . . . . shall appear at any court in the Commonwealth in defense of all actions or suits brought against the Town or its officers in their official capacity." Id. (emphasis added). In this case, the Planning Board Defendants are named only in their official capacities. Therefore, it is Town Counsel that should be representing the Planning Board Defendants in this case, rather

---

[2] M.G.L. c.40, §1 states that "[c]ities and towns shall be bodies corporate." M.G.L. c.40, §1. Section 2 states that "[a] town may in its corporate capacity sue and be sued by its name, and may appoint necessary agents therefor." M.G.L. c.40, §§1-2; see also Twomey v. Town of Middleborough, 468 Mass. 260, 263 (2014) ("The town is a municipal corporation and a political subdivision of the Commonwealth . . . [and a] board of selectmen acts as . . . the chief executive officer of the town." (citing D.A. Randall & D.E. Franklin, Municipal Law and Practice §6.13 (5th ed. 2006)).

12

than their privately retained counsel.[3] Requiring that Town Counsel represent the Planning Board, as well as the Board of Selectman, will assure that the Town and its instrumentalities speak in court with one voice.

As indicated earlier, the Planning Board implicitly recognized that the Board of Selectman controls all litigation concerning the Town, and that Town Counsel alone may represent the Town's interests, by not retaining counsel or filing an answer to the complaint of its own. In these circumstances, the Planning Board Defendants lack standing.

This case is materially different than Alton, in which state law gave the intervenors a protectable interest independent of the Town's. More specifically, as explained earlier, in Alton, the First Circuit held that the intervenors could establish "injury in

---

[3] The Supreme Judicial Court has held that "[i]n the absence of legislative authority, it is settled that a department of a city or town has no authority to employ counsel." O'Reilly v. Town of Scituate, 328 Mass. 154 (1951). There are examples of the Massachusetts legislature conferring the authority to retain counsel on a municipal entity. See e.g. M.G.L. c.71, §37E; id. §16(j). However, the Planning Board Defendants do not point to, and this court does not find, any provision within the Massachusetts General Laws conferring such authority on municipal planning boards, or their members in their official capacities. See Board of Public Works of Wellesley v. Board of Selectman of Wellesley, 377 Mass. 621, 629, n.8 (1979) ("[W]hen the Legislature has intended to authorize municipal boards and departments to retain separate counsel it has known how to do so.")

13

fact" because they had a "legal interest under state law," in particular under a New Hampshire statute allowing challenges to a zoning board's variance decision. 646 F.3d at 80 (citing N.H. Rev. Stat. Ann. §677:4). However, the Planning Board Defendants have not identified any state statute that would provide them with a comparable protectable interest in this case. Moreover, the intervenors in Alton only had standing to object to the municipality's decision to grant a variance rather than the authority to veto any such decision that the Planning Board Defendants assert here.

The conclusion that the Planning Board Defendants lack standing is not altered by the Supreme Court's decisions in Bender v. Williamsport Area School District, 475 U.S. 534, 544 (1986), and Coleman v. Miller, 307 U.S. 433, 438 (1939), which are relied upon by the Planning Board Defendants. In Bender, the Supreme Court held that one member of a nine-member school board, Youngman, lacked standing to appeal a lower court decision against the school board, when the other eight members of the board had chosen not to appeal. Bender, 475 U.S. at 536. In dicta on which the Planning Board Defendants rely, the Supreme Court wrote that "it might be an entirely different case if, for example, state law authorized School Board action solely by unanimous consent, in which event Mr. Youngman [the dissenter] might claim that he was legally entitled to protect 'the effectiveness of [his] vot[e].'" Id. at

14

544, n.7. However, the Court immediately qualified its reasoning by indicating that that even if Youngman were able to allege that his vote had been rendered ineffective, he "would have to allege that his vote was diluted or rendered nugatory under state law and even then he would have a mandamus or like remedy against the Secretary of the School Board; he would not be entitled to take legal action <u>in the Board's authority</u> in his own name." <u>Id</u>. (emphasis added). In contrast, in the instant case, the Planning Board Defendants are, in effect, seeking to represent the Planning Board itself.

In <u>Coleman</u>, after the Lieutenant Governor of Kansas, the presiding officer of the State Senate, cast a vote in favor of a legislative amendment to break a tie, state senators who had voted against the resolution filed a mandamus action contending that the Lieutenant Governor lacked the authority to cast the deciding vote and that as a result of his vote, their votes had been "virtually held for naught." <u>Id</u>. at 438. The Supreme Court held that the dissenting senators had standing to bring the action because they possessed a "plain, direct and adequate interest in maintaining the effectiveness of their votes." <u>Id</u>. at 446-47. In <u>Raines v. Byrd</u>, 521 U.S. 811, 824 (1997), the Supreme Court explained that it had emphasized in <u>Coleman</u> that if "these legislators (who were suing as a bloc) were correct on the merits, then their votes not to ratify the amendment were deprived of all validity."

In contrast, in the instant case, the Planning Board Defendants' votes to deny the requested special permit were given full effect and the permit was not issued. The filing of suit by Varsity, however, implicates the Board of Selectman's right to control and compromise litigation. Therefore, the Planning Board Defendants are not similarly situated to the legislators who were found to have standing in Coleman.

Accordingly, the court concludes that the Planning Board Defendants lack standing to challenge the Agreement for Judgment and the Town is properly-named as a defendant. Therefore, the Planning Board Defendants' answer is being struck.

V. THE AGREEMENT FOR JUDGMENT

Although the Planning Board Defendants lack standing, the court has nevertheless considered their objections to the request for approval and entry of the Agreement for Judgment. The court finds that their objections are not persuasive.

A. Legal Standards

"Approval of a proposed consent decree is committed to the discretion of the district court." United States v. Cannons Engineering Corp., 720 F. Supp. 1027, 1035 (D. Mass. 1989), aff'd 899 F.2d 79 (1st Cir. 1990). In assessing a proposed consent decree, the district court "must review [it] to ensure that it is fair, adequate and reasonable; that the proposed decree will not violate the Constitution, a statute or other authority; and that it is

16

consistent with the objectives of Congress." See Conservation Law Found. of New England. Inc. v. Franklin, 989 F.2d 54, 58 (1st Cir. 1993) (internal quotations and citations omitted). In addition, in evaluating the fairness of a proposed consent decree, "a court should examine both the procedural and substantive aspects of the decree," and "fairness should be examined from the standpoint of signatories and non-parties to the decree." Cannons 720 F. Supp. at 1040. The court's "discretion should be exercised in light of the strong policy in favor of voluntary settlement of litigation." Id. at 1035.

B. Analysis

The Agreement for Judgment between Varsity and the Town constitutes a fair, adequate and reasonable compromise concerning the costs and benefits to the Town, its citizens, and Varsity. Varsity and the Town have submitted an Affidavit of Shawn Farrell, the Chairman of the Town's Board of Selectman, in which he explains the reasons the Town has chosen to enter into the Agreement. See Farrell Affidavit (Docket No. 40-1).

More specifically, the issuance of the permit will address a current wireless communications coverage gap in Hamilton and, therefore, lead to improved wireless service for the Town's citizens. The Town will also receive financial benefits -- lease payments, co-location fees, and utility payments -- as a result of issuance of the permit. In addition, the Agreement saves the Town

future costs of litigation. Id. at ¶¶6, 9. The citizens of the Town will benefit from the Town's ability to use those funds for other public purposes. Id. Moreover, the Agreement for Judgment includes multiple concessions by Varsity that will benefit the Town, including restrictions on site clearing, generator testing, and lighting and signage associated with the Facility. Id. at ¶8. According to Farrell, if the Town were to lose this case, the Town might lose the opportunity to impose these conditions on the permit it would be required to issue. Id. at ¶7. The Agreement benefits Varsity by allowing it to construct the Facility.

The Agreement is also consistent with the intent of Congress, and the public interest weighs in favor of entering a judgment incorporating the terms set forth in the Agreement. As the Supreme Court has written, the "primary purpose" of the TCA is to "reduce regulation and encourage the rapid deployment of new telecommunications technologies." Reno v. ACLU, 521 U.S. 844, 857 (1997). Courts in this district have repeatedly emphasized that court approval of settlement agreements in TCA disputes is consistent with this public purpose. See e.g. Patterson v. Omnipoint Commc'ns. Inc., 122 F. Supp. 2d 222, 228 (D. Mass. 2000) ("If a zoning board recognizes that a reviewing court will likely find its actions violative of the TCA, it behooves that board to settle with the plaintiff company on the most favorable terms possible; rather than spend more on litigation, with the potential

to receive less favorable terms from a judgment."); Brehmer v. Planning Bd. of Town of Wellfleet, 238 F.3d 117, 121 (1st Cir. 2001) ("As we have previously noted, such settlements are fully consistent with the TCA's aims . . . . Requiring further hearings for the sole purpose of revisiting the underlying validity of the permit application would complicate the settlement process and delay the ultimate resolution of the zoning dispute."); Town of Amherst, N.H. v. Omnipoint Commc'ns Enterprises, Inc., 173 F.3d 9, 17 (1st Cir. 1999). In this case, the Agreement for Judgment between Varsity and the Town fully resolves protracted and expensive litigation.[5] Accordingly, the consent judgment furthers the objectives of Congress and protects the public interest.

The court recognizes that entry of the agreed-upon judgment will result in the issuance of a special permit without the supermajority of the Planning Board usually required by Massachusetts law. However, as indicated earlier, Massachusetts law also authorizes a town to give its Board of Selectman the authority to compromise litigation. The Hamilton Board of Selectman have in this case reasonably concluded that settlement is in the Town's best interest, taking into account the Town's

---

[5] A judgment incorporating the terms of the Agreement will be a "final judgment" because all counts in the Complaint are resolved by the Agreement for Judgment. See Cannons, 720 F. Supp. at 1040; Agreement for Judgment (Docket No. 28) at 3.

chances of success on the TCA claims, associated litigation costs, and the desirability of certain conditions on the permit to which Varsity has agreed, as well as other legitimate considerations, including improved wireless service in Hamilton. Therefore, it is not appropriate to permit a minority of the Planning Board to compel the continuation of expensive and potentially unmeritorious litigation by the Town.[7]

VI. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The Planning Board Members' Rule 21 Motion to Dismiss for Misjoinder (Docket No. 42) is DENIED;

2. The Town's Motion to Strike (Docket No. 21) is ALLOWED; and

3. Judgment incorporating the terms set forth in the Agreement for Judgment (Docket No. 28) shall be ENTERED.

   /s/ Mark L. Wolf
   UNITED STATES DISTRICT JUDGE

---

[7] There are only two members of the present Planning Board who object to the Agreement for Judgment. As explained earlier, Woods resigned from the Planning Board and no longer lives in Hamilton. Even if Clark and Howard were found to have standing, Woods would not. See Karcher v. May, 484 U.S. 72, 74 (1987) (holding that public officials sued only in their official capacities may not appeal an adverse judicial decision after they office).